**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beseder, Inc. dba Rima Fine Art; Dror Darel and Tracy Penwell, husband and wife,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Osten Art, Inc., an Arizona corporation; Ostrovsky Art Consulting, LLC, an Arizona LLC; Osten Art, Inc., Publishing, an Arizona corporation; Victor Ostrovsky and Bella Ostrovsky, husband and wife,<br><br>　　　　Defendants.<br>_____<br>Osten Art, Inc., an Arizona corporation; and Victor Ostrovsky, an individual,<br><br>　　　　Counterclaimants,<br><br>　v.<br><br>Beseder, Inc. dba Rima Fine Art; Dror Darel, and individual; and Tracy Penwell, an individual,<br><br>　　　　Counterdefendants.<br>_____ | No. CV 05-00031-PHX-NVW<br><br>**ORDER** |

　　　The court has before it Defendants' Renewed Motion for Partial Summary Judgment, Doc. # 96, the Response, Doc. # 117, the Reply, Doc. # 125, and related documents, Docs. # 97, 118 and 126. The court also has considered the substantive briefing before the court in Defendants' previous Motion for Partial Summary Judgment, Docs. # 41, 42, 43, 53, 56 and 58.

Defendants' motion will be granted and summary judgment ordered against Plaintiffs' causes of action for interference with business advantage and violation of the right of publicity of Tracy Penwell and Dror Darel.

**I.     Procedural Background**

    **A.     State Court Litigation**

On February 20, 2003, Osten Art, Inc. ("Osten Art") filed a complaint in Maricopa County Superior Court against Beseder, Inc., dba Rima Fine Art ("Beseder") for breach of fiduciary duty and breach of contract. (CV2003-003378.) Beseder asserted a counterclaim against Osten Art for defamation on March 3, 2003, and filed a separate complaint elaborating the defamation claim on June 28, 2003. The cases were then consolidated. (Doc. # 42 ¶ 9.) Osten Art challenged Beseder's defamation counterclaims on a motion for partial summary judgment before Judge Albrecht in the Maricopa County Superior Court. (Doc. # 42 ¶ 14.) Judge Albrecht dismissed all of Beseder's defamation counterclaims against Osten Art with prejudice in Minute Entries dated September 12, 2005 and September 21, 2005. (Doc. # 42 ¶¶ 16-17.) Judge Albrecht's Minute Entries were memorialized in a final Order filed at the Maricopa County Superior Court on June 5, 2006. (Doc. # 97 ¶ 24.) Beseder did not appeal the dismissal of its defamation claims. (*Id.* at Ex. A.)

    **B.     Federal Court Litigation**

In the interim, Beseder filed a complaint against Osten Art on January 5, 2005, alleging federal causes of action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* and violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), as well as state law causes of action for interference with business advantage and violation of the right of publicity of Tracy Penwell and Dror Darel, the owners and operators of Beseder (hereinafter "state law claims" or "state law causes of action"). (Doc. # 1.) Osten Art moved for partial summary judgment on Beseder's state law claims on January 17, 2006, arguing that both causes of action were precluded by (1) Judge Albrecht's dismissal of Beseder's defamation counterclaims in the Maricopa County Superior Court with prejudice, and (2) Judge Carroll's September 7, 2005 determination in a separate but related

1  federal lawsuit that Beseder reproduced, displayed and sold copies of copyright-protected
2  Renoir sculptures (CV 03-1310 PHX-HMM, Doc. # 290).  (Doc. # 41.)
3      This court denied Osten Art's motion for partial summary judgment without prejudice
4  on March 30, 2006, for failure to produce evidence that the Maricopa County Superior
5  Court's dismissal of Beseder's defamation counterclaims was reduced to a final judgment.
6  (Doc. # 70.)  Osten Art now renews its motion for partial summary judgment on Beseder's
7  two state law claims with Judge Albrecht's final Order in hand. (Doc. # 96.)

8  **II.  Factual Background**

9  **A.  Beseder's Defamation Counterclaims in State Court**

10  In its consolidated counterclaim against Osten Art in Arizona state court, Beseder
11  asserted that Osten Art defamed Rima Fine Art ("Rima") by (1) making fraudulent
12  representations about Rima and its art collection through Osten Art's website; (2) diverting
13  internet traffic and email correspondence away from Rima's website and Rima's owners, Dror
14  Darel and Tracy Penwell; (3) undermining Rima's reputation by maligning the authenticity
15  of Rima's collection of original Renoir plaster and terra cotta sculptures and bronze sculpture
16  reproductions; and (4) operating at least two internet sites to assail the authenticity of the
17  Renoir sculptures, and, hence, the reputation of Rima and its owners.  (Doc. # 42 ¶ 7(a)-(i).)
18  Rima produced the following evidence in support of these four instances of
19  defamation in its discovery responses.  As to the first instance of defamation, Rima asserted
20  that Mr. Ostrovsky, a competitor of Rima and the owner of Osten Art, placed the trademark
21  Rima Fine Art and the names of Dror Darel and Tracy Penwell as well as a press release for
22  the Renoir bronze exhibit in the "metatags" of the website, ostenart.com, so that anyone
23  performing a search through an internet search engine for any of the above names would
24  retrieve Osten Art's website in addition to Rima's website.  (Doc. # 42 ¶ 11(b).)  In support
25  of its second defamation argument, Rima contended that ostenart.com displayed a message
26  stating that anyone wishing to contact Tracy Penwell, President, Rima Fine Art should email
27  to ostenart.com.   (Doc. # 42 ¶ 11(c).)   The same message was used to redirect
28  correspondence addressed to Mr Dror Darel.  (Doc. # 42 ¶ 11(d).)

1    Beseder offered Brodie Soare, an expert on the subjects of web design and search
2 engine optimization, to support its contention that Osten Art made fraudulent representations
3 about Rima on its website and also diverted internet traffic away from Rima's website.
4 Specifically, Mr. Soare opined that Mr. Ostrovsky placed an altered version of Rima's press
5 release in the background of ostenart.com to fool search engine algorithms into displaying
6 ostenart.com to searchers using the term "Rima Fine Art."  Mr. Soare also stated that Mr.
7 Ostrovsky registered the domain names rimafineart.org and rimafineart.net to imply
8 endorsement by or connection with Rima Fine Art, thereby allowing Mr. Ostrovsky to create
9 misleading email addresses such as drordarel@rimafineart.org.   (Doc. # 126 ¶¶ 26, 28.)

10   Rima also contended that Mr. Ostrovsky placed false information designed to
11 undermine the authenticity of the Renoir sculptures on at least two internet sites,
12 artwatchdog.com and artfraudreport.com, including statements that the Renoir sculptures are
13 "fake," that purchasers of the artwork will be prosecuted by lawyers for the heirs of Richard
14 Guino, the paid assistant sculptor who helped Renoir create some of the sculptures,  and that
15 the plaster casts presented as original are copies.  (Doc. # 42 ¶¶ 11(e)-(g).)   Rima alleged
16 that Mr. Ostrovsky posted a picture of the Rima gallery without authorization from Rima on
17 these websites along with pictures of Mr. Darel and Ms. Penwell following headings which
18 read "Art Fraud" or "Stop Art Fraud."  (Doc. # 42 ¶¶ 13(h)-(i).)

19   In rejecting Beseder's counterclaims on summary judgment, Judge Albrecht
20 necessarily determined that the foregoing evidence did not raise a triable issue of fact and
21 was thus legally insufficient to support a cause of action for defamation under Arizona Law.
22 Ariz. R. Civ. P. 56; *Orme Sch. v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990) (articulating
23 the legal standard applied by Arizona courts to motions for summary judgment).

24   **B.   Beseder's State Law Claims in Federal Court**

25   Beseder supported its state law counts in this court with the same evidence that it used
26 to prosecute its defamation counterclaims at the Maricopa County Superior Court.
27 Specifically, Beseder asserted that Mr. Ostrovsky placed the Rima Fine Art trademark, the
28 names of Dror Darel and Tracy Penwell and Rima's Renoir bronze sculpture exhibit press

- 4 -

1  release in the metatags of his website without the named individual's consent so that anyone
2  performing a search through an internet search engine for any of the above names would
3  retrieve Mr. Ostrovsky's website rather than Rima's website. (Doc. # 1 ¶ 26). Beseder once
4  again alleged that Mr. Ostrovsky included a message on his web page directing anyone
5  wishing to contact Tracy Penwell, President, Rima Fine Art to email ostenart.com, and also
6  that Mr. Ostrovsky repeated this unauthorized conduct in regard to Dror Darel. (*Id.* at ¶¶ 28-
7  30.)

8        Beseder designated Brodie Soare, the same web design and search engine
9  optimization expert used by Plaintiffs in the state court ligation, to support these allegations.
10 The expert witness report submitted to this court is virtually identical to the report Mr. Soare
11 submitted to the Maricopa County Superior Court, raising no new issues of fact and offering
12 no novel evidence as to Mr. Ostrovsky's conduct. (Doc. # 126 ¶¶ 28-29.)

13       As was the case in the prior lawsuit, Beseder's federal pleadings assert that Mr.
14 Ostrovsky began an internet campaign to undermine Rima's reputation and that of its owners
15 and employees by maligning the authenticity of Rima's collection of original Renoir plaster
16 and terra cotta sculptures and bronze sculpture reproductions. (Doc. # 1 at ¶¶ 32-33.) The
17 specific objections raised by Beseder as to the content of artwatchdog.com and
18 artfraudreport.com are identical to those raised in the state court litigation, *i.e.*, challenging
19 the published assertions that the Renoir sculptures are forgeries, that any purchaser or
20 possessor of such sculpture will be prosecuted by the lawyers of the heirs of Richard Guino,
21 and that the plaster presented as originals are copies. (*Id.* at ¶¶ 34-36.) Beseder also repeated
22 its complaints about the unauthorized use of a picture of the Rima gallery as well as the
23 posting of pictures of Mr. Darel and Ms. Penwell following headings which read "Art Fraud"
24 or "Stop Art Fraud." (*Id.* at ¶¶ 37-38.)

25       The only novel assertion made by Beseder in its January 5, 2006 complaint that is
26 potentially relevant to Osten Art's Renewed Motion for Partial Summary Judgment is its
27 contention that Mr. Ostrovsky violated the Copyright Act, 17 U.S.C. § 101 *et seq.* by creating
28 unauthorized advertisements substantially similar to Beseder' original copyrighted

1 advertisements. (Doc. # 1 ¶¶ 46-48). However, this evidence is relevant only to Beseder's
2 copyright infringement claim, and not to Beseder's state law causes of action.

3 **III.     Legal Standard For Summary Judgment**

4 Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is
5 proper when "the pleadings, depositions, answers to interrogatories, and admissions on file,
6 together with affidavits, if any, show that there is no genuine issue as to any material fact and
7 that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
8 The court must evaluate a party's motion for summary judgment construing the alleged facts
9 with all reasonable inferences favoring the nonmoving party. *See Baldwin v. Trailer Inns,*
10 *Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). Conclusory and speculative testimony in
11 affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat
12 summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.
13 1979).

14 The party seeking summary judgment bears the initial burden of informing the court
15 of the basis for its motion and identifying those portions of the pleadings, depositions,
16 answers to interrogatories, and admissions on file, together with the affidavits, if any, which
17 it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v.*
18 *Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with
19 a properly supported motion, the party opposing the motion "may not rest upon the mere
20 allegations or denials of his pleading, but . . . must set forth specific facts showing that there
21 is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985).

22 Local Rule of Civil Procedure 56.1(a) requires the party opposing a motion for
23 summary judgment to "set forth the specific facts, which the opposing party asserts, including
24 those facts which establish a genuine issue of material fact." Summary judgment is
25 appropriate against a party who, pursuant to Federal Rule 56 and Local Rule 56.1, "fails to
26 make a showing sufficient to establish the existence of an element essential to that party's
27 case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S.
28 at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

## IV. Legal Analysis

### A. Claim Preclusion

#### 1. Introduction

Osten Art argues that it is entitled to partial summary judgment because Judge Albrecht's final Order dismissing all of Beseder's defamation counterclaims with prejudice in state court bars Beseder's claims for interference with business advantage and violation of the right of publicity of Tracy Penwell and Dror Darel. Defendants contend that these two claims arise out of the same transactional nucleus of operative facts that formed the basis of Plaintiffs' defamation counterclaims in the previous litigation in state court, and that Plaintiffs used the same evidence to support both lawsuits. (Doc. # 96, 10-11.) Plaintiffs counter that their state law claims are not precluded because these counts are not the same "cause of action" adjudicated in Maricopa County Superior Court, as that term is defined under the Ninth Circuit law of claim preclusion. (Doc. # 117, 2-5.) The court finds that Beseder's two state law claims are in fact precluded by the prior litigation between the parties in state court.

#### 2. Arizona Law of Claim Preclusion Applies

Plaintiffs and Defendants both mistakenly rely upon Ninth Circuit case law in support of their respective claim preclusion arguments. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires this court to give the same preclusive effect to a state-court judgement as another court of that State would give. *Int'l Evangelical Church of the Soldiers of the Cross of Christ v. Church of the Soldiers of Christ*, 54 F.3d 587, 590 (9th Cir. 1995). Accordingly, we must look to the law of the State of Arizona, not the federal common law, to determine the "res judicata effect" of the Maricopa County Superior Court decision.[1] *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)

---

[1] The doctrine of res judicata includes two distinct types of preclusion, claim preclusion and issue preclusion. In accordance with Ninth Circuit case law, this court will use the terms "claim preclusion" and "issue preclusion", rather than "res judicata" (as merger and bar) and "collateral estoppel." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 n.2 (9th Cir. 1988).

In order for claim preclusion to attach under Arizona law, there must be (1) a final judgment on the merits, (2) common identity of the parties and the capacity in which they appeared, (3) common identity of the subject matter and (4) common identity of the cause of action. *Hall v. Lalli*, 191 Ariz. 104, 106, 952 P.2d 748, 750 (Ct. App. 1997), *aff'd* 194 Ariz. 54, 977 P.2d 776 (1999). In other words, a final judgment on the merits rendered without fraud or collusion by a court of competent jurisdiction in a prior suit involving the same parties bars a second lawsuit based on the same cause of action. *Norriega v. Machado*, 179 Ariz. 348, 351, 878 P.2d 1386, 1389 (Ct. App. 1994). A claim preclusive judgment binds the parties in subsequent litigation not only as to "every issue [actually] decided in the prior action" but also as to "every issue that could have been decided." *Id.* This is true even when, as is the case here, the final judgement in the first action is entered after the second action is filed. *Murphy v. Bd. of Med. Exam'rs*, 190 Ariz. 441, 449, 949 P.2d 530, 538 (Ct. App. 1997).

**3.   Application of Arizona Law of Claim Preclusion**

    **i.   The Final Judgment on the Merits, Common Identity of the Parties and Common Identity of the Subject Matter Requirements**

The first, second and third elements of the test for claim preclusion under Arizona law are easily satisfied on the facts of this case. As to the first prong, it is undisputed that the final Order memorializing Judge Albrecht's dismissal of all Beseder's defamation counterclaims with prejudice constitutes a "final judgment on the merits." The second and third elements of Arizona claim preclusion are also readily satisfied, as the parties to the state court litigation are identical to the parties to the present dispute, and Mr. Ostrovsky's conduct vis-à-vis Rima Fine Art was the subject matter of Beseder's counterclaims for defamation in state court just as it is the subject matter of the state law causes of action currently before this court. The last requirement for claim preclusion under Arizona law, common identity of the cause of action, requires closer consideration.

### ii. **The Common Identity of the Cause of Action Requirement**: **the Same Evidence Test**

To test whether two lawsuits present the same cause of action, Arizona law asks "whether proof of the claims in the two cases depends upon the same evidentiary facts." *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 458 (9th Cir. 1980) (collecting Arizona cases and applying Arizona claim preclusion law), *Rousselle v. Jewett*, 101 Ariz. 510, 513, 421 P.2d 529, 532 (1966).  As applied, the "same evidence test" means that  "two causes of action which arise out of the same transaction or occurrence are not the same for purposes of [claim preclusion] if proof of different or additional facts will be required to establish them." *E.C. Garcia & Co. v. Ariz. State Dep't of Revenue*, 178 Ariz. 510, 520, 875 P.2d 169, 179 (Ct. App. 1993).  These facts may be gleaned from evidence in the two cases as well as from the pleadings. *Pierpont v. Hydro Mfg. Co.*, 22 Ariz. App. 252, 254, 526 P.2d 776, 776 (Ct. App. 1974).  Although a recent decision from the Arizona Court of Appeals criticized the same evidence test as "antiquated" and called for the adoption of the modern transactional test articulated by Section 24 of the Restatement (Second) of Judgments and applied by the Ninth Circuit in the cases cited by Plaintiffs and Defendants in their motions, the identity-of-cause-of-action inquiry continues to be governed by the same evidence test in Arizona. *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (Ct. App. 1997).  Accordingly, Beseder's state law causes of action are precluded only if no additional evidence is needed to prevail on these counts beyond what was adduced by Plaintiffs in support of their defamation counterclaims in state court.

Beseder's state law claims here and its defamation counterclaims in the state court case are legally identical for preclusion purposes.  In their response to Defendants' Renewed Motion for Partial Summary Judgment, Plaintiffs assert that it is "inherently obvious that proving a claim for defamation requires evidence that is substantially different than that used to prove claims for interference with a business advantage and violation of the right of publicity." (Doc. # 117, 4.) Plaintiffs support this  contention only by stating that the "evidence presented in [the state court defamation and the federal court] actions is

- 9 -

1  substantially different because the elements of proof of these diverse claims are completely
2  different. (*Id.* at 3.)  While it is self-evident that the elements required to make out a prima
3  facie case of defamation are different from the elements required to prove interference with
4  business advantage and a violation of the right of publicity, Plaintiffs have failed to show that
5  any additional evidence is actually required to satisfy the elements of the respective causes
6  of action.   In fact, Plaintiffs have not brought any additional material facts to the court's
7  attention that differentiate Plaintiffs' state law causes of action from the defamation claims
8  previously adjudicated in Maricopa County Superior Court.  As demonstrated in the Factual
9  Background set forth above, Beseder's federal complaint and expert witness report offer no
10 evidence that was not previously introduced by Beseder in support of its defamation claim.
11        The statements made by Beseder during oral argument on September 19, 2006, as to
12 the existence of new and distinctive evidence are of no moment as Beseder failed to include
13 any such evidence in its Response as required by LRCiv. 56.1.  In any event, even during
14 oral argument Plaintiffs' counsel failed to articulate any facts or evidence not previously
15 urged in the state court.  Being grounded on the same evidence, Beseder's causes of action
16 for interference with business advantage and violation of the right of publicity are precluded
17 by the adjudication against their claims in state court.
18        It should be noted that the Arizona Supreme Court does not appear to have had an
19 opportunity to revisit the same evidence test in the years following the Arizona Court of
20 Appeals' criticism of the standard in *Phoenix Newspapers*.  No petition for review was filed
21 in that case, and the court is not aware of any subsequent published opinion in which the
22 Arizona Supreme Court was asked to bring the Arizona law of claim preclusion in line with
23 the "clear majority of courts" by abandoning the same evidence test in favor of the
24 Restatement (Second) of Judgments' transactional test. *Phoenix Newspapers, Inc.*, 188 Ariz.
25 at 240, 934 P.2d at 804. Briefly stated, the modern transactional rule prevents the relitigation
26 of claims closely related to previously litigated claims which arise out of the same events or
27 "common nucleus of operative facts," meaning that the facts in both cases are "so woven
28 together . . . in time, space, origin or motivation . . . as to constitute a single claim . . .

form[ing] a convenient unit for trial purposes." Restatement (Second) of Judgments § 24 cmt. b (1982). Framing the identity-of-cause-of-action inquiry in these terms promotes judicial economy by preventing the parties from reviving essentially the same cause of action under a new legal theory. *Id.* at cmt. c. The same evidence test, in contrast, can be manipulated to undermine the finality of judgments as it allows litigants to recast claims arising out of the same transaction under new legal theories, so long as the new claims are supported by somewhat different facts. *Id.*

In many cases, the difference between the same evidence test and the transactional test would lead to a different outcome. While the facts of *Phoenix Newspapers* present just such a case–finding preclusion under the modern test but no preclusion under the old–the facts of this case do not. Plaintiffs stipulate that their state law causes of action arise out of the same transactional nucleus of operative facts that was the subject of the prior defamation lawsuit. (Doc. # 117, 5.) Plaintiffs' interference with business advantage and violation of right of publicity claims would therefore be precluded if the Arizona Supreme Court were to adopt the Restatement (Second)'s transactional standard for claim preclusion. Even under the current law, however, these claims are barred, as Plaintiffs failed to point to any new evidence in support of the state law claims now before the court that is different from what they offered in support of the defamation claims already adjudicated in state court.

### 4. Conclusion

Beseder's interference with business advantage and violation of the right of publicity claims are properly barred because all four elements of the Arizona test for claim preclusion are satisfied. Plaintiffs have not met their burden under Rule 56 of the Federal Rules of Civil Procedure and LRCiv. 56.1 to produce a genuine issue of material fact. Accordingly, partial summary judgment dismissing these claims with prejudice is appropriate as a matter of law.

## B. Issue Preclusion

Dismissal of Plaintiffs' state law claims on claim preclusion grounds makes it unnecessary to consider Defendants' request to dismiss these claims on the basis of issue preclusion.

**C.     Waiver**

Plaintiffs contend that Defendants waived the affirmative defenses of claim and issue preclusion by failing to assert them in their initial pleadings pursuant to Federal Rule of Civil Procedure 8(c). This argument is without merit. The record shows that Defendants first raised the preclusion issue in their March 8, 2005 Motion to Dismiss and Motion to Stay Plaintiffs' Complaint. (Doc. # 4, 9.) Defendants asserted the defense again in their June 17, 2005 Answer and Counterclaim. (Doc. # 16, 10.) Furthermore, under Ninth Circuit case law, defendants may raise an affirmative defense for the first time in a motion for summary judgment if the delay does not prejudice the defendant. *Rivera v. Anaya*, 726 F.2d 564 (9th Cir. 1984). Abundant correspondence between counsel for Beseder and Osten Art and court statements demonstrate that Plaintiffs were well aware of Defendants' preclusion arguments by January 17, 2006, the date on which Defendants submitted their first motion for partial summary judgment. (Doc. # 125, 8-10.) Moreover, the defense could not possibly be late if it was deemed premature until entry of the June 5, 2006 final judgment. Plaintiffs are not unfairly prejudiced by the timing of the preclusion defense now asserted by Defendants in their Renewed Motion for Partial Summary Judgment, and it is not barred as untimely.

**D.     Rule 11 Sanctions**

The court need not address Defendants' request for sanctions under Federal Rule of Civil Procedure 11, improperly raised for the first time in their Reply, Doc. # 125, to which Plaintiffs have not had an opportunity to respond. Any renewed motion for attorney's fees should be made at the conclusion of the case so all attorneys' issues can be addressed at the same time.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Partial Summary Judgment, Doc. # 96, against Plaintiffs' claims for interference with business advantage and violation of the right of publicity is granted.

DATED this 25th day of September 2006.

_____
Neil V. Wake
United States District Judge

- 13 -